# In the United States Court of Federal Claims

No. 25-2041T
Filed: November 9, 2026
NOT FOR PUBLICATION

**MATTHEW THOMAS DAVIS,**

***Plaintiff,***

**v.**

**UNITED STATES,**

***Defendant.***

*Matthew Thomas Davis*, *pro se*.

*Larry Steven Schifano* and *Anthony Mark Cognasi*, U.S. Department of Justice, Washington, DC, for the defendant.

## MEMORANDUM OPINION AND ORDER

The plaintiff, Matthew Thomas Davis, proceeding *pro se*, filed this action against the United States, acting through the Internal Revenue Service ("IRS"), on December 1, 2025. The plaintiff alleges that he is the executor and beneficiary of the MTD Revocable Living Trust ("the Trust"). He alleges that he filed Form 56 (Notice Concerning Fiduciary Relationship) notifying the IRS of his fiduciary authority over all tax filings by the Trust. He further alleges that he filed Form 1040 ("1040") for tax year 2024, seeking a refund related to his personal tax return, and two Forms 1041 ("1041s") for tax year 2024, seeking refunds related to the Trust. The plaintiff also alleges that he received from Affinity Plus Federal Credit Union ("Affinity Plus") a Form 1099-B ("1099-B") for taxes purportedly withheld from broker and barter transactions, which the plaintiff reported on his 1040. The plaintiff alleges that the IRS failed to process these forms.[1]

During discovery, the defendant served a subpoena on Affinity Plus seeking any 1099s issued by Affinity Plus to the plaintiff for 2024 and any related documents. In response, Affinity Plus indicated that it had no records reflecting its issuance of any 1099 to the plaintiff for 2024. Affinity Plus further confirmed that the absence of any records reflected that Affinity Plus had not issued the plaintiff a 1099-B for 2024.

[1] On August 7, 2026, the IRS notified the plaintiff that it had processed his 2024 personal tax return and refunded $475 but disallowed the refund claim for $187,178.00, the amount reported as withheld on the 1099-B. The plaintiff still disputes the disallowed portion of his refund claim.

On August 11, 2026, the plaintiff filed a motion for leave to amend his complaint. In response, the defendant opposed the motion, arguing the proposed amendment was futile. Alternatively, the defendant argued that even if the motion to amend were granted, the complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The defendant supported its argument with a declaration from an employee of Affinity Plus denying that Affinity Plus had issued the plaintiff a 1099-B for 2024. The plaintiff's motion for leave to amend was denied, and the defendant's motion to dismiss was converted to a motion for summary judgment. The plaintiff was given until November 4, 2026, to produce evidence rebutting the declaration from Affinity Plus and demonstrating that the funds for which he seeks a tax refund were remitted to the IRS.

On November 4, 2026, the plaintiff filed his response. The plaintiff's response consists of two "corrected" 1099-B's that the plaintiff asserts are amendments to the 1099-B the plaintiff previously filed to support his claim to a tax refund. In his response to the motion for summary judgment, the plaintiff argues that the Uniform Commercial Code ("UCC") entitles him to a financial interest in the "Invesco Balanced-Risk Allocation Fund." Neither submission of the two new 1099-Bs nor the plaintiff's UCC argument demonstrates that the funds for which he seeks a tax refund were remitted to the IRS by Affinity Plus or anyone else on behalf of the plaintiff. There remains no disputed material fact, and the defendant's motion for summary judgment is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff seeks a tax refund for 2024 based on his 1040 and two 1041s (collectively the "2024 tax return"). The plaintiff also seeks official acknowledgment of his standing as executor and beneficiary of the Trust under the Form 56 he filed. Attached to the complaint are a "Certification of Trust" for MTD Holding Company, a "Certified Declaration of Living Trust Beneficiaries" for a trust with the same trust identification number as the Trust, the Form 56 filed by the plaintiff, and a 1099-B purportedly issued to the plaintiff by Affinity Plus. The plaintiff did not include a copy of either of his 2024 1041s.[2]

On February 3, 2026, the defendant answered. In its answer, the defendant claimed that it lacked sufficient information to admit or deny most of the allegations and noted "that certain of the identified documents do not appear to have been included as attachments to the [c]omplaint including, most notably, IRS Forms 1040 and 1041 and any schedules and attachments thereto."

On March 31, 2026, a discovery schedule was set; fact discovery was due to be completed by July 31, 2026. On April 10, 2026, the plaintiff served on the defendant 10 interrogatories, 10 requests for admission, and 10 requests for production of documents. On May

[2] The plaintiff did not attach the 1099-B to his complaint but did provide it as an exhibit to a motion to compel. Similarly, the plaintiff did not attach his 2024 1040 to the complaint but provided it as an exhibit to his proposed amended complaint.

18, 2026, the defendant responded to the written discovery requests but objected to most of the requests for production.

On May 19, 2026, the defendant served its requests for production of documents and interrogatories. The defendant requested, among other things, all documents referenced in the complaint and all documents substantiating the information reported on the 1099-B allegedly issued to the plaintiff by Affinity Plus.

Concurrent with its requests to the plaintiff, the defendant served a subpoena on Affinity Plus seeking any 1099s it had issued to the plaintiff for 2024 and related documents. In response, Affinity Plus indicated that it had no records reflecting its issuance of any 1099 to the plaintiff for 2024 and confirmed that the absence of those records confirms that it did not issue the plaintiff a 1099-B for 2024.

On May 20, 2026, the plaintiff responded to the defendant's discovery requests. His production largely consisted of IRS-generated documents that were already within the defendant's possession; he also indicated that he would search for other IRS-generated documents. On June 24, 2026, the plaintiff declined to supplement his discovery responses.

On June 22, 2026, the plaintiff filed a motion to compel, and on June 29, 2026, the defendant filed its own motion to compel. On August 4, 2026, the defendant's motion to compel was granted and the plaintiff was ordered to produce by August 10, 2026, all documents responsive to the defendant's request for production in his possession. The plaintiff's motion to compel was denied. The deadline for fact discovery was extended to August 28, 2026. *See Davis v. United States*, No. 25-2041, 2026 WL 2253805 (Fed. Cl. August 4, 2026).

On August 10, 2026, the plaintiff supplemented his discovery responses with all documents in his possession responsive to the defendant's request for production. On August 11, 2026, the plaintiff filed a motion for leave to amend his complaint. The plaintiff sought to amend the complaint to focus on his personal 1040, narrowing the scope of his claim. Attached to the plaintiff's proposed amended complaint were his 2024 1040, his IRS Account Transcript for 2024, his IRS Wage and Income Transcript for 2024, a Form 1099-A and 1099-B, a 1099 Online Electronic-Filing Records and Confirmations printout, and an Efile4Biz Electronic-Filing Records and Confirmations printout.

On August 13, 2026, after learning that he had received a partial refund of $475, the plaintiff asked the defendant to stipulate to a voluntary dismissal without prejudice, but the defendant indicated that it would only agree to a dismissal with prejudice, a proposal the plaintiff rejected.

On August 25, 2026, the defendant filed its opposition to the motion to amend. The defendant argued that both the original complaint and the proposed amended complaint failed to state a claim, so any amendment would be futile. The defendant also moved for dismissal under RCFC 12(b)(6). The plaintiff requested additional time to oppose the defendant's motion and, after additional time was granted, filed his opposition on October 20, 2026. The plaintiff appears to argue that he has corresponded with the IRS but has not yet received any additional

documentation to support his claim. Although the plaintiff explains that he may receive additional documents by November 7, 2026, he did not request an additional extension of time to file his opposition to the defendant's motion to dismiss.

On October 21, 2026, the motion for leave to amend the complaint was denied as futile. The defendant's motion to dismiss under RCFC 12(b)(6) was converted to a motion for summary judgment under RCFC 12(d); the plaintiff was given until November 4, 2026, to produce evidence rebutting the Affinity Plus declaration and demonstrating that the funds for which he seeks a tax refund were remitted to the IRS. The plaintiff was warned that the failure to provide admissible evidence rebutting the declaration would result in summary judgment for the defendant. The plaintiff responded on November 4, 2026, providing two additional 2024 1099-Bs that the plaintiff claims are amendments to the 1099-B he attached to his motion to compel. The plaintiff also advances an argument that the UCC entitles him to a financial interest in assets held by Invesco. Oral argument is not required to resolve this motion.

## II. JURISDICTION

The jurisdiction of the Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act itself does not "create[ ] a substantive right enforceable against the Government by a claim for money damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). Instead, the Tucker Act limits the court's jurisdiction to claims based on money-mandating statutes and regulations. *Metz v. United States*, 466 F.3d 991, 995-96 (Fed. Cir. 2006).

The Court has jurisdiction to resolve the plaintiff's claim under 28 U.S.C. § 1346(a)(1), which confers on the Court of Federal Claims jurisdiction, concurrent with the district courts, over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected . . . ."

## III. STANDARD OF REVIEW

Under RCFC 56, summary judgment if appropriate when the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *See id.* at 250.

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "'[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). To establish "that a fact cannot be or is genuinely disputed," a party must "cite[ ] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A).

One way that a moving party can demonstrate that no material fact is genuinely disputed is by showing that the non-moving party lacks evidence needed to prove an essential element of its claim. *See Celotex Corp.*, 477 U.S. at 322-23 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The moving party must do more than merely assert that the non-moving party has not produced enough evidence, but the moving party may show that a fact cannot be genuinely disputed by showing "that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1); *see Mirror Worlds Techs., LLC v. Facebook, Inc.*, 800 F. App'x 901, 910 (Fed. Cir. 2020) (requiring the moving party to show that sufficient evidence cannot be produced by the non-moving party and denying summary judgment, in part, because discovery was still open).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." RCFC 56(c)(4). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and a grant of summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## IV. DISCUSSION

The defendant contends that the documents on which the plaintiff relies do not establish a valid claim. The defendant maintains that the plaintiff's claim relies solely on his own submissions to the IRS and self-generated printouts. The 1099-B on which the refund claim relies has been shown not to have been prepared by Affinity Plus, the alleged issuer. In the declaration of its officer, Affinity Plus denies having any record of issuing a 1099-B to the plaintiff for the 2024 tax year, meaning that none was created or sent to the IRS. Without additional documentation refuting the Affinity Plus declaration or authenticating the amounts claimed on the 1099-B that appears to be fraudulent, the defendant asserts that no genuine issue of material fact exists and that summary judgment is warranted.

To defeat summary judgment, a plaintiff seeking a tax refund must plausibly allege that taxes exceeding the amount lawfully owed were in fact remitted to the IRS. *Pellegrino v. United States*, No. 26-1215, 2026 WL 1846616, at *1 (Fed. Cir. June 26, 2026). "The action to recover

on a claim for refund is . . . an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him." *Lewis v. Reynolds*, 284 U.S. 281, 283, *modified*, 284 U.S. 599 (1932) (cleaned up).

A plaintiff has the burden of proving by preponderant evidence both that the assessment or determination of the tax is wrong and its correct amount, if any. *Cook v. United States*, 46 Fed. Cl. 110, 116 (2000) (citations omitted); *see also Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998). Taxpayers must substantiate the deductions and credits they claim by maintaining the records necessary to establish both their entitlement to them and their amount. 26 U.S.C. § 6001; *see INDOPCO, Inc. v. Com'r*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

The plaintiff claims entitlement to a $187,178.00 refund based on the 1099-B he attached to his motion to compel. This exhibit does not demonstrate that any overpayment of taxes occurred because the exhibit is undermined by the declaration from Affinity Plus confirming that it neither prepared the 1099-B nor issued it to the plaintiff. The plaintiff can only defeat summary judgment by providing additional evidence that may authenticate the 1099-B. The plaintiff has not submitted any other documentation supporting his claim. Rather than addressing the declaration from Affinity Plus, the plaintiff argues that he has been unable to obtain IRS records he needs to support his claim.

A taxpayer does not need to rely on IRS documents to establish a claim for a tax refund; the burden is on the plaintiff to show that the substantive requirements for filing a tax return have been met. *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997). The IRS only receives records provided to it by taxpayers; it also obtains records related to taxpayers from various institutions (like employers, banks, brokerages), which must provide copies of their submissions to the IRS to the taxpayer to whom the submissions relate. 26 U.S.C. § 6045 (a)-(b); 26 C.F.R. § 1.6045-1(k)(1). The burden then falls on a plaintiff seeking a refund of taxes paid to maintain the documentation needed to support a refund claim. *See* 26 C.F.R. § 1.6001-1(a), (e). Had any institution submitted a 1099-B for the plaintiff to the IRS for 2024, it would also have provided a copy to the plaintiff, but the only evidence the plaintiff has supplied is the fraudulent one ascribed to Affinity Plus. Because the plaintiff would already have the records and documentation he needs to establish that the funds he seeks to be refunded were remitted to the IRS, his claim that he is unable to meet the defendant's motion because he lacks the necessary records is unavailing. If the records exist, they would already be in the plaintiff's possession.

The two additional 1099-Bs the plaintiff provided in support of his response to the motion for summary judgment are equally unavailing. To substantiate his claim for a refund of taxes paid, the plaintiff must provide records supporting his assertion that Affinity Plus remitted $187,178.00 to the IRS in connection with a broker and barter exchange in 2024. Alternatively, the plaintiff may produce evidence that either he or a party acting on his behalf remitted to the IRS taxes that were overpaid. Merely creating two additional 1099-Bs does not refute the declaration submitted by the defendant from an employee of Affinity Plus denying that Affinity Plus issued the plaintiff a 1099-B for the 2024 tax year. The plaintiff has still not produced any records to refute the Affinity Plus declaration or to substantiate his claim that the tax payment he seeks to have refunded was ever paid to the IRS. Therefore, no genuine dispute of material fact exists.

The plaintiff also advances a new argument. He now contends that he is entitled to a refund under the UCC based on a financial interest he claims to hold in the Invesco Balanced-Risk Allocation Fund. The plaintiff claims that deposits at Affinity Plus confer "creditor rights" under the UCC, including a supposed entitlement to "approximately $932,210,000" in the Invesco Balanced-Risk Allocation Fund, Class R6. This argument fails. Courts have consistently rejected as frivolous arguments for tax refunds premised on the UCC. *See, e.g.*, *Carter v. United States*, No. 26-517, 2026 WL 3119194, at * 8-9 (Fed. Cl. Oct. 16, 2026); *Harris v. United States*, 113 Fed. Cl. 290, 294 (2013); *Gravatt v. United States*, 100 Fed. Cl. 279, 283, 289 (2011); *Crain v. Comm'r*, 737 F.2d 1417, 1417-18 (5th Cir. 1984). Although the plaintiff's argument is objectively frivolous, he appears to have pursued it in good faith. Because the plaintiff is proceeding without a lawyer, he will not be subject to a monetary sanction for advancing this argument.

The requirements of federal income taxation arise from the Internal Revenue Code ("IRC"); the UCC is irrelevant to the obligations arising under the IRC, except to the possible extent it may create property interests under state law. The issue raised by the plaintiff's claim for a refund of taxes purportedly withheld is whether he can demonstrate through competent evidence that the funds identified on the original 1099-B arising from a broker or barter transaction were remitted to the IRS and that the amount of the remittance exceeded the taxes the plaintiff lawfully owed. If he cannot, then he is not entitled to a refund. The plaintiff has failed to produce any evidence to counter the Affinity Plus declaration or to show otherwise that the funds he seeks to be refunded to him were ever remitted to the IRS. Therefore, summary judgment for the defendant is appropriate.

Because the plaintiff has not provided any evidence to support his refund claim aside from the 1099-B from Affinity Plus, and that document has been proven to be fraudulent, no evidence now supports the plaintiff's claim for a refund. There is no genuine dispute of material fact, and the defendant's motion for summary judgment is granted.

## V. CONCLUSION

The undisputed evidence shows that the plaintiff is not entitled to a tax refund for 2024 because the only basis on which he has supported his claims has been shown to be fraudulent. Accordingly, the defendant's motion for summary judgment under RCFC 56 is **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly. No costs are awarded.

It is so **ORDERED**.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**